Jan'y Term, Randolph *vs.* Adams. 1868.

# Wheeling.

Absent, HARRISON, J.*

JEPTHA F. RANDOLPH *vs.* PRESTON M. ADAMS.

## January Term, 1868.

1. If a bill in equity to repeal a junior grant charges that the same was procured by fraud and strategem, although the complainant has the elder legal title and the possession has always been with the title, it is sufficient to give the court jurisdiction under chapter 112, section 64, of the Code of Virginia.

2. Where the evidence fails to show, that an elder grant under which a complainant in the court below claimed, covered the land embraced by a junior patent sought to be repealed, and yet was sufficient to make it probable that such is the fact, the court below should direct an issue to be tried by a jury to ascertain that fact.

3. Where it does not appear that more than one of two tracts of land, containing equal quantities, the local description of which may apply to either, was ever entered on the land books and charged with taxes, and where it does not appear which of the two was so entered and charged and which not, he that would show the forfeiture of either of them, must show which it was, or at least must show it to be the one that covers the land embraced by his junior patent if he seeks to set up that defense.

4. The opinion of a witness, although he be a surveyor, unsupported by other evidence, as to the identity of a tract of land, unless he also state some fact or facts to enable the court to determine the location of the tract, is clearly insufficient to enable the court to locate the land.

5. An acknowledgment of a deed or power of attorney before a notary public of the republic of Texas was held to be an insufficient acknowledgment for the admission of such writings to record in Virginia.

On the first Monday in January, 1860, *P. M. Adams* filed his bill in chancery in the circuit court of *Doddridge* county against *Jeptha F. Randolph*, in which it is alleged that *Randolph*, by fraud and strategem, procured a patent from the commonwealth of *Virginia*, about the year 1851, for 135 acres of land, the greater portion, if not all, of which laid in the county of *Doddridge*, and for fear of detection he went to the county of *Harrison* to obtain a patent, and had by

---

*He was absent from illness. *Judge E. H. Caldwell* of the I circuit was called to the bench.

various means undertaken to enforce the possession of the same, well knowing at the time that the complainant had title to the land through *S. P. Moore*, to whom a grant was issued in 1794 for 2,000 acres of land, which covered nearly all, if not the whole, of the 135 acre tract. That *Moore* in 1807 took actual possession of said land and lived on it until his death in 1823; that from the death of said *Moore* to the date of the suit, his heirs had been in the actual possession of the same, and in 1844 made a deed of partition of the 2,000 acres and other lands of their ancestor, by which the 2,000 acres were conveyed to *Lamar Moore*, one of the heirs; that *Lamar Moore* conveyed the 2,000 acres to the complainant; that *S. P. Moore* placed the same on the commissioners's books of *Harrison* county, and that it was embraced in and was a part of other lands of said *Samuel P. Moore*, which were aggregated on the commissioner's books. The complainant prayed that the grant of 135 acres to *Randolph* might be repealed and declared null and void.

On the 25th day of October, 1860, the defendant filed his answer to the complainant's bill, and the complainant replied generally. It was denied in the answer that the patent for the 135 acres was obtained by fraud and stratagem, and that the respondent went to the county of *Harrison* to make his entry, but the same was made in the county of *Doddridge*, where the land laid, or the greater portion thereof. That respondent fairly and *bona fide* deposited his plat and certificate with the register of the land office, and obtained his grant for the 135 acres. Respondent denied that he had by various means undertaken to force possession of the land, but had brought his suit at law setting up his title to the 135 acres for the purpose of obtaining the possession. That at the time of making his entry respondent knew nothing about the claim of the complainant, and was still of opinion that the land was liable to entry. At the April term, 1866, a decree was rendered that the patent issued to the defendant for the 135 acres, on the 1st day of November, 1851, to the extent that it embraced any part of the 2,000 acres patented to *Samuel P. Moore*, be, and the same was

repealed. The court was of opinion that the 135 acres patented to the defendant laid mainly within the 2,000 acres patented to *S. P. Moore* on the 5th day of June, 1794, and claimed by the complainant, having descended to him by heirship and sundry conveyances, and the court was further of opinion that the defendant had failed to show that the 2,000 acre tract, or any part thereof, had, since the 5th day of June, 1794, been liable to entry under the laws of the commonwealth of *Virginia*, and that the defendant's patent for the 135 acres was issued contrary to law.

A certificate of *Jonathan M. Bennett*, auditor of public accounts, was filed, showing that *S. P. Moore*, the patentee of the 2,000 acre tract, had upon the land books of the commissioners of the revenue for the county of *Harrison*, sundry tracts of land which from quantity and local description may have included said 2,000 acre tract, from the year 1806 to 1824 inclusive, and that the heirs of said *Moore* are charged on said books, also with sundry tracts of land which also from quantity and location may have included said 2,000 acre tract, from the year 1825 to 1831 inclusive, and that none of said lands were returned to the auditor's office delinquent for the non-payment of the taxes assessed thereon for any one or more of the years in which they were so charged, from the year 1806 to 1831 inclusive.

*Daniel Sherwood*, a witness sworn for the complainant, said he had made surveys of the 3,300 acre survey, the 2,000 acres No. 4, *John P. Duvall's* 400 acres, *Daniel Henry's* 500 acres, *Daniel Davisson's* 400 acres, and *S. P. Moore's* survey No. 3 of 2,000 acres, and the 112 and 113 acres known as *S. P. Moore's* farm laid down upon the plat marked "A." In making said surveys he said he found "original work" sufficient to satisfy him that said surveys are located and exist as laid down in plat marked "A," according to the calls of the patent for said land, except as corrected by him. According to the plat the 135 acre tract was within the bounds of the *S. P. Moore* 2,000 acre survey.

The defendant appealed to this court.

*Lee & Edmiston* for the appellant.

*R. S. Small* for the appellee.

BROWN, President.   The language of the statute, Code of 1860, chap. 112, sec. 64, p. 545, is broad and comprehensive, and I see no good reason for giving to it the narrow construction contended for by the counsel for the appellant.

The case at bar is within the reason no less than the language of it, and I think this is a proper case for a bill in equity to repeal a patent, and remove the cloud upon the title, which that patent occasioned, although such patent might be void.

But as the evidence fails to show that the elder grant under which complainant in the court below claimed, covered the land embraced by the junior patent sought to be repealed, and yet is sufficient to make it probable that such is the fact, there should have been an issue directed to be tried by a jury to ascertain that fact.   The defendant in the court below contends that the land, if covered by the elder grant, was forfeited, and relies upon the auditor's certificate, filed by the other side to prove it, which fails to do it.   A forfeiture will not be presumed, neither the facts nor want of them, from which such presumption can be deduced.   One of the 2,000 acre tracts was properly on the commissioner's land books and charged with taxes for the years 1810 and 1811, and I think it but reasonable to conclude from the evidence that it was subsequently continued thereon and in part made up the land subsequently charged as 6,000 acres and again as 5,122 acres and again as 5,089 acres, the larger quantities being the result most probably, if not manifestly, of official blunders in the commissioner by combining the quantities of several smaller tracts into one entire amount, and though the exact amount of the additions, correctly made, would not correspond precisely with those charges, yet the appearance of certain figures in each, the local description of the lands and the taxes assessed, all go to show, not only the loose manner in which commissioners performed their duty in matters of such importance, but also

what the facts really were; and this is strengthened by the fact that when some of the smaller tracts disappear from the land books, for any year or years, the larger entries are augmented sometimes by the correct addition of the smaller parcels added and sometimes by an incorrect amount. But as there are two tracts of 2,000 acres as well as several others of different quantities, it does not appear that more than one of the 2,000 acre tracts was ever entered on the land books and charged with taxes, nor does it appear which of the two was so entered and charged and which not. But he that would establish the forfeiture of either of them must show which it was, at least must show it to be the one that covers the land embraced by his junior patent, if he seeks to set up that defense. I think, therefore, that the decree of the circuit court should be reversed, with costs to the appellant, and the cause remanded to the circuit court of Doddridge county to be there proceeded in, in conformity with the principles above indicated, with liberty to the defendant below to establish the forfeiture by proof if he can, and like liberty to the plaintiff below to introduce further proof if he desires of the due execution of the deed from Lamar Moore to him.

MAXWELL, J. The first cause of error assigned is that the complainant by his own showing had no claim to the interposition of a court of equity, as he charges in his bill that he has the elder legal title, and that the possession has always been with that title. Under the statute, Code of Virginia, 1860, chapter 112 section 64, page 545, there are three causes assigned for which a grant may be repealed by bill in equity, one of which is fraud. The bill distinctly charges that the defendant by fraud and stratagem procured his patent for the land in question, so that I think there is sufficient charged in the bill to give jurisdiction. 2 Rand., 206; 3 Gratt., 291, 315.

The second cause of error complained of is that the complainant was bound to prove the identity and location of the survey claimed by him, and upon the proofs he offered the

court should have dismissed his bill, or at least should have directed an issue to try the question of identity. The identity of the 2,000 acre survey claimed by the complainant depended upon the identity of one or more other surveys in the same connection, because Sherwood, the only witness examined to prove the identity of it, says that he did not think that he could have identified this survey had it not been for the connection of surveys laid down on the plat made by him and marked "A." This witness made a survey of some of the lots of the connection of surveys in which this 2,000 acre tract claimed by the complainant is supposed to lie, and of some coterminous surveys, and in respect to their identity he says that in making said surveys he found "original work" sufficient to satisfy him that said surveys are located and exist as laid down in said plat marked "A," according to the calls of the patents for said land, and this is all the evidence in the case tending to show that the 2,000 acre survey is located as claimed by the complainant. This witness does not mention a single fact which would enable the court to determine the location of the land in question, but says that he found "original work" sufficient to satisfy him that the surveys are located as claimed.

The purpose of evidence is to satisfy the court and not the witness. It seems to me that this evidence was clearly insufficient to locate the land in question, as it amounted to nothing more than the opinion of the witness. 5 Gratt., 120. It is claimed that the certificates of the auditor filed in the case show that the 2,000 acre tract claimed by the complainant was forfeited for omission and liable to entry. It is incumbent on him who alleges a forfeiture to show it. S. P. Moore, the patentee of the 2,000 acre tract claimed by the complainant, had upon the books of the commissioners of the revenue for the county of Harrison, for all of the years for which it might have been forfeited for omissions, a tract or tracts of land which from quantity and local description may have included this tract, and if it might have been included it must be presumed that it was until the contrary appears.

It is claimed here that the complainant has no title to the 2,000 acres claimed by him because the deed to him from Lamar Moore is not properly authenticated.  The deed is acknowledged before a notary public in the republic of Texas, on the 14th day of December, 1844.  This authentication I think is clearly insufficient.  The authentication of the power of attorney from Lamar Moore, under which the partition of Samuel P. Moore was made, is insufficient in the same manner.  Upon the whole case I think the decree complained of ought to be reversed, with costs to the appellant, and the cause remanded to the circuit court of Doddridge county for further proceedings to be had therein, with leave to the complainant to show, if he can, by an issue, or in any other appropriate manner, that the 2,000 acre tract of land claimed by him is located as claimed by him; and with leave, also, to the complainant to show, if he can, that the power of attorney from Lamar Moore to P. M. Adams, by virtue of which the lands belonging to the heirs of S. P. Moore were divided and the deed from Lamar Moore to the complainant for the 2,000 acre tract of land claimed by him, were properly executed; and with leave to the defendant to show, if he can, that the said tract of land was forfeited and liable to entry.

CALDWELL, J.  The bill of the complainant, in the court below, represents that the defendant, Randolph, by fraud and stratagem, procured a patent from the commonwealth of Virginia, about the year 1851, for 135 acres of land, the greater portion of which, if not all, lying in the county of Doddridge, and alleging further that the defendant, for fear of detection, went to the county of Harrison to obtain his patent for said land, and has by various means undertaken to force possession of the same, he well knowing at the same time that complainant had title to said land by and through S. P. Moore, to whom it had been patented many years before.

These allegations of the complainant's bill it is sufficient to notice in considering the first point made in the argument of the cause.

The defendant by his answer admits that he did obtain a grant for 135 acres of land, but says it is not true that the grant was obtained by fraud and stratagem, nor that defendant went to Harrison county to make his entry. That it was made in Doddridge county where the greater portion of the land lies; that a survey thereof was regularly and fairly made, and that the defendant fairly and *bona fide* deposited his plat and certificate of survey with the register of the land office, and obtained from the commonwealth a grant for the 135 acres, according to law. The defendant denies that he had by various means undertaken to force possession of said land, except that he had brought suit at law setting up his title to the land and for the purpose of obtaining possession of the same, and asserting that the law tribunal is fully competent to decide and settle the question of right between the complainant and himself to said land.

It will be seen from the transcript of the record that the allegations of fraud and stratagem in the procurement of the grant, as set up in complainant's bill, are fully and completely refuted by the answer and the exhibits filed in support thereof. This is conclusive of this part of the case. But then it is alleged in the last paragraph of the bill, "that from the premises stated, the complainant believes said grant of 135 acres of land is void or voidable, because it was issued contrary to law and to his prejudice." I remark first, the statute provides that a grant may be repealed where it is shown to have been issued "to the prejudice of the equitable rights of a party." The allegation of complainant that this grant was issued to his prejudice amounts to nothing in a question of the repeal of a grant. And secondly, that the grant here is either a void or a valid grant. It cannot be considered in any measure a voidable grant. True, it is absolutely void if issued contrary to law, as claimed by the complainant.

Now the question arises, what is the purport and effect of the terms in the statute "contrary to law?" Grants for land in Virginia were obtained by making due entry of the land proposed to be taken up, obtaining a plat and certifi-

cate of survey thereof within the time prescribed by law, and returning the same to the register of the land office in the manner required by the statute. If these steps have not been fully taken the grant would be adjudged as having issued contrary to law. But I do not understand that where a grant of land may conflict with the claim of any other land proprietor, such grant having been obtained regularly, all the requirements of the statute being fully complied with, it should, therefore, be determined to have been issued contrary to law in the sense properly to be given, in my opinion, to the terms of the statute under consideration. Upon the application of a party, Virginia land warrants are issued, requiring the surveyor of any county in the State to enter on his land book and to survey for the applicant "any vacant and unappropriated land or lands liable to entry," as he might designate. When the entry has been duly made, and a plat and certificate of survey of the land returned, within the time prescribed by law to the land office, a grant will issue, unless restrained by a caveat proceeding. Such grant, I maintain, will not have issued contrary to law, though it may be alleged to conflict with a grant previously issued. The commonwealth for a consideration awards a grant, assuring, to some extent, to the patentee, title to the land embraced by such grant. This being so, there can be no inquiry in a court of equity as to any conflict between various grantees touching their respective claims to land granted to them by the commonwealth. The jurisdiction of such court is to adjudge whether in the procurement of a grant of land, fraud has been perpetrated, or the steps required to be taken towards its issue have been pursued, or whether it was obtained to the prejudice of another party's equitable rights, and to this extent only.

In my opinion the court below erred in not dismissing the complainant's bill, and the decree should therefore be reversed.


DECREE REVERSED.